UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                          Criminal No. 10-155 PJS/AJB

              Plaintiff,

v.                                        **REPORT AND RECOMMENDATION**

GLENN DALE ACON, Jr.,

              Defendant.

    Allen A. Slaughter, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Michael W. McDonald, Esq., for the defendant, Glenn Dale Acon, Jr..

This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on October 27, 2010, at the U.S. Courthouse, 316 North Robert Street, St. Paul, MN 55101. Testimony was presented and exhibits were received at the hearing with regard to suppression of identification evidence, and suppression of evidence obtained by search and seizure, including derivative evidence.

Based upon the file and documents contained therein, along with testimony and exhibits presented at hearing, the magistrate judge makes the following:

**Findings**

    **May 13, 2010, Incidents and Arrest.** A 911 emergency phone call regarding an incident at a specified residential address in St. Paul, Minnesota, was received by St. Paul Police at approximately 11:45 a.m. on May 13, 2010. The caller, Ms. Grace Perez, was reporting an argument over money and she indicated that she was being assaulted during the 911 call. Ms. Perez subsequently stated that her female assaulter was a drug dealer; that the assault suspect had

now left in a particularly identified car with a male and two children; and that they might have a gun in the trunk. (Hrg. Ex. 1, track 1;[1] Hrg. Ex. 2). Officers were dispatched to the incident scene at 11:48 a.m. There were no suspects at the residence at that time and the officers left at 12:08 p.m. (Hrg. Ex. 2). A few minutes later, at 12:16 p.m., a 911 call was received from Ms. Rochelle Perez regarding a second incident at the same residence. (Hrg. Ex. 1, track 3; Hrg. Ex. 4). Rochelle Perez was not at the incident location, but she informed dispatch personnel that people were back at the residence and were again threatening her mother, Grace Perez. At approximately the same time Grace Perez placed another 911 call in which she stated that the people were back and that "Mike" had pointed a gun at someone. Mike was described as a tall black male wearing a black jacket, blue jeans, and a black shirt, and had braided hair. There was someone screaming and crying in the background. (Hrg. Ex. 1, track 4). The 911 call was cut off for a short time and was resumed by a return 911 call from Ms. Cassandra Perez, the person in the background during the initial connection. Cassandra Perez also provided a description of the person known to her as "Mike," and stated that he had put a silver and black gun, with a long nose, in her face. She reported that the suspects had driven away in a four-door green car, license number XXX 304. (Hrg. Ex. 4). Cassandra further stated that the vehicle had proceeded in the direction of "where they live," the neighborhood of Case and Forest. The dispatch report of a person with an observed gun resulted in a heightened response by police, and multiple officers answered the dispatch. (Hrg. Ex. 1, track 5). St. Paul Police Sgt. Axel Henry arrived at the residence within approximately 30 seconds and stopped his squad car about 1/4 block away

---

[1] Hrg. Ex. 1 is a compact disc containing 7 separate tracks which are indicated in the citations to the exhibit.

from the residence. He observed that there was no green car at the scene, and a woman, Cassandra Perez, came into the street to talk with him. Meanwhile, Sgt. Henry simultaneously heard police reports indicating that other police officers had spotted and followed the green car, and that Sgt. John Pyka had stopped the vehicle near the intersection of Earl St. and Beech. At that time Cassandra Perez indicated that she already knew "Mike," whom she described as her cousin's boyfriend. Cassandra stated that her mother, Grace Perez, had bought drugs at about 2:00 a.m. the night before, and that the people were back to collect money. She further reported to Sgt. Henry that "Mike" had pointed a gun at her while she was holding a child.

Sgt. Pyka heard the same dispatch that Sgt. Henry had received regarding the gun pointing incident. At the time, Sgt. Pyka and Officer Kennedy were on a narcotics detail and were doing surveillance in an unmarked pickup truck in a lot at near the intersection of Earl St. and Ross. His location was approximately one-and-a-half street miles from the site of the reported incident, and based upon the dispatch report and his knowledge of the street system in the area, Sgt. Pyka surmised that the suspect vehicle might be going by him very soon. Indeed, a green car with license number XMX 304, and two black male occupants, drove by within two minutes and Sgt. Pyka proceeded to follow. Sgt. Pyka was reluctant to attempt a vehicle stop because his unmarked vehicle was not fully equipped with lights and siren, so he called for assistance from a marked police squad. The suspect vehicle stopped at the traffic light at Minnehaha and Earl St., and Sgt. Pyka stopped immediately behind the car. After proceeding through the intersection, the green car abruptly pulled into an alley and stopped alongside a building facing south. Sgt. Pyka pulled in and stopped several feet behind the green car. (Hrg. Ex. 7). The front doors of the green car opened and a person got out on the passenger side and

3

faced the pickup. The officers were wearing dark jackets with large "POLICE" lettering and as they exited their vehicle, the passenger observed them and ran around the corner of a building heading south. Officer Kennedy immediately ran after the passenger, while Sgt. Pyka approached the car with his firearm drawn and ordered the driver, defendant Glenn Acon, to get out of the vehicle. In response, the driver began to reach to his right side. Sgt. Pyka recognized and knew the defendant by name, and based upon his familiarity with Mr. Acon's criminal history, as well as the dispatch report, Pyka reasonably thought the defendant might be reaching for a gun. The officer, therefore, immediately hit him in the head with his weapon. The defendant then said that he was just trying to release his seat belt, and as soon as the belt was disengaged, Sgt. Pyka pulled the defendant from the vehicle onto the ground and placed him in handcuffs. The driver had hair braids and was wearing a dark jacket and a dark shirt. Meanwhile, Sgt. Pyka heard Officer Kennedy yelling that she had apprehended the fleeing passenger, and additional squad cars and officers arrived at the scene to take custody of defendant Acon and the passenger. During the chase after the fleeing passenger, Officer Kennedy observed him drop a gun. A silver and black revolver was recovered from the scene along with a brown cotton glove. A second brown cotton glove was on defendant Acon's hand when he was apprehended. Both the defendant and the passenger were arrested at the scene.

Meanwhile, back at the incident residence, Sgt. Henry placed Cassandra Perez in the back seat of his squad car for a three minute trip to the location of the stop for a possible show-up identification. When Sgt. Henry arrived at Earl and Beech he noticed a group of officers congregated nearby and he stopped his vehicle in an alley 80-85 feet away from the group, believing that the suspect was being held in the area of the officers. Another squad car

was parked in the alley where Sgt. Henry had parked. Sgt. Henry announced from inside his car that he had the witness with him, at which time Officer Jones, seated in the nearby squad car, got out and opened the driver's side back door, whereupon defendant Acon stepped out of the vehicle. Cassandra Perez immediately saw Mr. Acon and said "oh my God, that's him." She stated that she was 100% certain of the identification.

**January 19, 2010, Interview Statements.** St. Paul Police Sgt. Pamela Barragan conducted an interview of defendant Glenn Acon on January 19, 2010. (Hrg. Ex. 14). Sgt. Barragan is assigned to the St. Paul Police Department's Gang and Gun Unit. The interview was undertaken following a vehicle stop on January 18, 2010, and defendant's arrest on an alleged firearm possession violation. (Hrg. Ex. 10). Prior to questioning, Sgt. Barragan read the defendant his rights from a pre-printed advice of rights form. (Hrg. Ex. 8). Mr. Acon was read each of his rights, including the right to remain silent and the right to have a court appointed lawyer present during questioning. The defendant separately initialed each of the rights and advisories, and he signed an acknowledgment that he understood each of his rights and had received a copy of the rights document. Mr. Acon also executed a Voluntary Consent for DNA Buccal Swab. (Hrg. Ex. 9). Mr. Acon made no request for the assistance of an attorney before or during the interview, and he did not assert his right to remain silent before or during questioning. The entire interview lasted approximately 14 minutes and was audio recorded. (Hrg. Ex. 14).

**Search Warrant.** January 22, 2010, Ramsey County District Court Judge James H. Clark, Jr. issued a warrant to search a particularly described residential location in St. Paul, Minnesota, including the yard and any outdoor storage areas. (Hrg. Ex. 10). The location is

5

further identified in the supporting affidavit as the residence of Glen Acon. The search warrant identified the objects of the warrant as firearms and firearm indicia; packages and documents showing ownership or transfer of firearms; papers tending to show residency of the search location; and a DNA sample. The warrant was issued on the basis of probable cause evidence asserted in the Affidavit of St. Paul Police Sergeant S. Lambie, including evidence obtained in the course of a vehicle stop and a search of the vehicle. The state search warrant authorized nighttime search and unannounced entry.

**January 22, 2010, Interview Statements.** St. Paul Police Sgt. Donald Grundhauser conducted an interview of defendant Glenn Acon on January 22, 2010, following the search of Mr. Acon's residence pursuant to a warrant. (Hrg. Ex. 1, track 6). Mr. Acon was arrested in connection with the search warrant execution after firearms were found in the attic. Sgt. Grundhauser is a member of the St. Paul Police Department's Gang and Gun Unit. Before questioning commenced, the defendant was read his rights from a pre-printed advice of rights form. (Hrg. Ex. 11). Mr. Acon was read each of his rights, including the right to remain silent and the right to have a court appointed lawyer present during questioning. The defendant separately initialed each of the rights and advisories, and he signed an acknowledgment that he understood his rights and had received a copy of the rights document. Mr. Acon made no request for the assistance of an attorney before or during the interview, and he did not assert his right to remain silent before or during questioning. The entire interview lasted approximately 30 minutes and was audio recorded (Hrg. Ex. 1, track 6).

**May 13, 2010, Interview Statements.** Sgt. Grundhauser again participated in an interview of defendant Glenn Acon at approximately 8:00 p.m. on May 13, 2010, following his

6

arrest by Sgt. Pyka earlier on the same day. Officer Boerger was also present during the interview. The defendant was read his rights from a pre-printed advice of rights form before questioning. (Hrg. Ex. 12). Defendant Acon was read each of his rights, including the right to remain silent and the right to have a court appointed lawyer present during questioning. The defendant separately initialed each of the rights and advisories, and he signed an acknowledgment that he understood his rights and had received a copy of the rights document. The acknowledgment was witnessed by Officer Boerger. Mr. Acon made no request for the assistance of an attorney before or during the interview, and he did not assert his right to remain silent before or during questioning. The entire interview lasted approximately 45 minutes and was audio recorded (Hrg. Ex. 1, track 7).

Based upon the foregoing Findings, the magistrate judge makes the following:

**Conclusions**

**May 13, 2010, Arrest**. Defendant Glenn Acon's arrest on May 13, 2010, was based upon evidence sufficient to establish probable cause that he had committed a criminal offense. The seizure of his person was therefore lawful, and evidence on his person was lawfully seized incident to the arrest. See United States v. Goodwin-Bey, 584 F.3d 1117, 1119-20 (8th Cir. 2009). In addition, the defendant's vehicle was not stopped as a result of police actions. Consequently, there is no basis to challenge the arrest on grounds that there was an unlawful vehicle stop; and Glenn Acon does not have grounds to challenge the seizure of a firearm that had been discarded by a fleeing passenger and was abandoned at the scene. United States v. Richardson, 537 F.3d 951, 957 (8th Cir. 2008). Suppression of the arrest and evidence obtained at the arrest scene is not required.

7

**Show-up.** Suppression of identification evidence on grounds that a witness identification of the defendant was made pursuant to constitutionally impermissible show-up procedures is not required. Defendant was not subjected to overly suggestive identification procedures at the scene of his arrest under circumstances in which he was identified by a person who had observed him only minutes prior to making the identification; he was previously known to the witness as her cousin's boyfriend; and she was able to specifically identify him by the nickname "Mike." Even if the court were to assume that the pretrial confrontation in this instance was impermissibly suggestive, the court concludes that the identification was not made under circumstances that would create a substantial likelihood of misidentification and is unreliable on that ground. United States v. Jones, 535 F.3d 886, 891 (8th Cir. 2008)(citing United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006)). In particular, the court finds that the identifying witness had ample opportunity to view the suspect during the confrontation at the Perez residence. The witness had direct contact with the suspect and was able to accurately describe his clothing and specifically identify him as her cousin's boyfriend, "Mike." Furthermore, the witness demonstrated no hesitancy and a high level of certainty at the time of the show-up. Jones at 891 (quoting factors cited in United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003)). Under the totality of the circumstances relating to the show-up identification in this matter, there is minimal likelihood of misidentification by the witness, and defendant's motion to suppress identification evidence should therefore be denied.

**May 13, 2010, Interview Statements.** Defendant Glenn Acon's interview statements to Sgt. Grundhauser and Officer Boerger following his arrest on May 13, 2010, were provided voluntarily and were not obtained in violation of the defendant's constitutional rights.

(Hrg. Ex. 1, track 7). The defendant was properly advised and was able to understand and comprehend his rights pursuant to Miranda as accurately presented to him from a written statement form. (Hrg. Ex. 12). He was not subjected to force, threats, or promises in exchange for his statements, and he effectively waived his right to remain silent and his right to the assistance of counsel. Upon considering the totality of circumstances, the Court is persuaded that defendant's will was not overborne; and he knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning. Suppression of defendant's interview statements on May 13, 2010, is not required.

**Search Warrant.** Evidence seized pursuant to a warrant to search a particularly described residence in St. Paul, Minnesota, including the yard and outside storage areas (Hrg. Ex. 10), was obtained pursuant to a search warrant that was issued on the basis of evidence that was insufficient to establish probable cause and the evidence was therefore seized in violation of the constitutional rights of the defendant Glenn Acon. The residence search warrant was issued by a Ramsey County District Court Judge on January 22, 2010, and was based upon evidence presented in the Affidavit of St. Paul Police Sergeant S. Lambie, including evidence obtained in the course of a vehicle stop and a search of the vehicle. However, the warrant application contains no evidence to establish a nexus between the residence and evidence of contemporary criminal activity or evidence to establish a likelihood that contraband would be found at the location at the time the warrant was issued. See United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). The application describes the affiant's association with the St. Paul Police Department Gang and Gun Unit and her experience in successfully obtaining and executing search warrants. In addition, the affidavit discusses the affiant's familiarity with the traffic stop

9

in which a firearm had been recovered, and also states that defendant Glenn Acon, along with two other vehicle occupants, had been recently arrested for possession of a firearm by an ineligible person.  The warrant application further identifies Mr. Acon as a convicted felon with specified convictions and a history of possessing firearms, and  also described a prior incident in September 2009, in which Mr. Acon had sustained a gunshot wound.  The affiant next asserts that Glenn Acon is known to reside at the duplex residence to be searched; he was observed at the location on January 22, 2010; and a confidential informant provided information that Acon had rooms in both the downstairs and upstairs units in the duplex.  Finally, the application states generally that Mr. Acon is known to hide firearms in both the upstairs and downstairs of the duplex, though the affidavit does not clearly indicate whether this information was obtained from the informant or is merely general knowledge among law enforcement officers.  The search warrant application provides no information whatsoever on which to assess the reliability of the informant; the application provides neither a clearly identified source nor evidentiary justification for the contention that Acon is known to hide firearms at the residence; and the application provides no evidence to connect any of the referenced incidents to the location to be searched.  See United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993); see also United States v. Schmidt, 662 F.2d 498, 502 (D. Minn. 1981).  In short, the application states no particularized or concrete reason to believe that firearms would be found at the search residence. See United States v. Neal, 528 F.3d 1069, 1073-74 (8th Cir. 2008) (a confidential informant reliability established in light of evidence that informant had made a controlled buy from the defendant and had reported first-hand observation of firearms in the defendant's residence).

Although the warrant properly and sufficiently identified the location of the

search and the items to be seized, the absence of a particularized reason to believe that the items to be seized would be found at that location is fatal to the warrant. At noted by the government, "a search is supported by probable cause if <u>facts are shown</u> making it likely that evidence of a crime will be found in the place to be searched." <u>United States v. Koons</u>, 300 F.3d 985, 990 (8th Cir. 2001) (emphasis added). The affidavit in this instance contains no such nexus facts, either directly or by reasonable inference; and references to the defendant's history of firearms offenses, along with his affinity for firearms and inclination to have them available to him, do not constitute facts to establish a connection to any particular location. Consideration of the totality of circumstances does little to cover this gaping hole. See <u>Illinois v. Gates</u>, 462 U.S. 213 (1983). Moreover, the affidavit discussion of confidential informant information is utterly barren of material that could be construed as probable cause evidence. The search warrant in this matter was not lawfully issued and evidence seized pursuant to the warrant should be suppressed.

**Good Faith.** As an alternative basis for finding that the search at issue in this case was not unlawful, the government urges the court to conclude that the good faith exception under <u>United States v. Leon</u>, 468 U.S. 897, 923, 104 S.Ct. 3405, applies. "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." <u>United States v. Formaro</u>, 152 F.3d 768, 771 n.4 (8th Cir. 1998)(citing <u>United States v. Fulgham</u>, 143 F.3d. 399, 401-02 (8th Cir. 1998)(quoting <u>Leon</u> 468 U.S. at 926). There is no claim in this matter that the issuing judge was not neutral, and there has been no request for a hearing or review under <u>Franks v. Delaware</u>, 438

11

U.S. 154, 98 S.Ct. 2674 (1978), to consider whether the affidavit contains deliberate or reckless misrepresentations, either by omission or misstatement. Formaro at 771. However, the defendant has asserted that the affidavit in this instance is "devoid of information that would support a probable cause determination [thereby] making any belief that probable cause exists completely unreasonable." Leon, 468 U.S. 897, 905. Defendant's position is well-taken. The absence of any facts to establish a nexus between Mr. Acon's actual possession of firearms and the residence to be searched is apparent. In addition, the evidentiary contributions from the CI are essentially nil, and to the extent the CI report is corroborated, are insignificant to the probable cause analysis. Finally, the defendant's offense history is largely irrelevant to the circumstances existing at the time of the warrant execution, but to the extent that an affinity for firearms is factually indicated, the affidavit establishes only a propensity to possess firearms in a vehicle rather than his residence. It was not objectively reasonable to rely upon the search warrant issued and executed in this matter, and the good faith exception under Leon should not preclude suppression of evidence seized pursuant to the warrant.

**January 19, 2010, Interview Statements.** Defendant Glenn Acon's statements to Sgt. Pamela Barragan in an interview conducted on the day after a vehicle stop and arrest on January 18, 2010, were provided voluntarily and were not obtained in violation of the defendant's constitutional rights. (Hrg. Ex. 14). The defendant was properly advised and was able to understand and comprehend his rights pursuant to Miranda as accurately presented to him from a written statement of rights form. (Hrg. Ex. 8). He was not subjected to force, threats, or promises in exchange for his statements, and he effectively waived his right to remain silent and his right to the assistance of counsel. Upon considering the totality of circumstances, the Court

12

concludes that Mr. Acon knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning. Suppression of defendant's interview statements on January 19, 2010, is not required.

**January 22, 2010, Interview Statements.** Defendant Glenn Acon's statements to St. Paul Police Sgt. Donald Grundhauser in an interview conducted after the defendant's arrest in connection with a search warrant were the fruit of an unlawful warrant execution and should therefore be suppressed. (Hrg. Ex. 1, track 6). The statements made on January 22, 2010, were made voluntarily and the defendant was properly advised and was able to understand and comprehend his rights pursuant to Miranda as accurately presented to him from a written statement of rights form. (Hrg. Ex. 11). Therefore, the statements were not obtained in violation of the defendant's constitutional rights with respect to the right to remain silent and the right to the assistance of an attorney. Furthermore, he was not subjected to force, threats, or promises in exchange for his statements, and he effectively waived his right to remain silent and his right to the assistance of counsel. Nonetheless, the defendant's arrest was based upon evidence obtained by way of an search warrant that was issued without probable cause to justify a search of the designated residence, and in the absence of any intervening event which might have served to break the connection between the unlawful seizures and the subsequent interview, the statements are tainted and should be suppressed. Defendant's motion to suppress statements obtained as a result of an unlawful search warrant should be granted. Oregon v. Elstad, 470 U.S. 298, 305-06 (1985).

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Glenn Dale Acon's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **granted in part and denied in part** [Docket No. 53] as further provided herein. Evidence obtained pursuant a search warrant executed at a specified St. Paul, Minnesota, residence on January 22, 2010 should be suppressed, along with derivative evidence to include statements provided in an interview with law enforcement conducted on January 22, 2010. To the extent the defendant seeks to suppress evidence obtained on dates other than January 22, 2010, the motion should be denied; and

2. Defendant Glenn Dale Acon's Motion to Suppress Eyewitness Identifications be **denied** [Docket No. 54].


Dated:     November 15, 2010

        s/Arthur J. Boylan
        Arthur J. Boylan
        United States Chief Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before November 26, 2010.